993 So.2d 112 (2008)
NEW TESTAMENT BAPTIST CHURCH INCORPORATED OF MIAMI, Appellant,
v.
STATE of Florida, DEPARTMENT OF TRANSPORTATION and Broward County, Appellees.
No. 4D07-4543.
District Court of Appeal of Florida, Fourth District.
October 22, 2008.
*113 S. Cary Gaylord and Paul D. Bain of Gaylord Merlin Ludovici Diaz & Bain, Tampa, for appellant.
Alexis M. Yarbrough, General Counsel, and Gregory G. Costas, Assistant General Counsel, Tallahassee, for Appellee-Department of Transportation.
Jeffrey J. Newton, County Attorney, Andrew J. Meyers, Chief Appellate Counsel, and James D. Rowlee, Assistant County Attorney, Fort Lauderdale, for Appellee-Broward County.
STONE, J.
New Testament Baptist Church appeals a final judgment in a condemnation suit brought by Florida Department of Transportation. The sole issue on appeal is whether it was error to grant summary judgment on the church's counterclaim for inverse condemnation, on the basis that the church's claim is barred by the statute of limitations. We affirm, concluding that where the rights of third parties are not affected, a stale claim is limited by the statute. We further find that the subject conveyance was not void ab initio, but merely voidable.
The church's claim was based upon its allegation that a plat dedication required by the county fourteen years earlier was unconstitutional and, therefore, void.
In 1990, the church dedicated 7.5 acres of its 96-plus acre parcel of vacant land to the public for roadway use, as a condition of receiving plat approval from the county to build a church and school. The dedication condition was pursuant to county ordinances. The plat was filed in 1992. Since that time, the church has continued to use the 7.5 acres.
In 2005, this eminent domain proceeding was brought to condemn a separate parcel for a road widening project, and the church's inverse condemnation counterclaim seeks compensation for the department's use of a portion of the previously dedicated 7.5 acre parcel for the road project.
The church claimed it still owned the previously dedicated/platted land because the dedication was an unconstitutional condition of plat approval and, therefore, "void." Specifically, the church argued the dedication was unconstitutional because there was no reasonable connection, or "rational nexus," between the required dedication and the amount of traffic to be generated by the proposed church and school. Conditioning approval of a permit on a dedication or conveyance is an invalid taking in the absence of a rational nexus, reasonable connection, or rough proportionality between the forced exaction and the permit. See Dolan v. City of Tigard, 512 U.S. 374, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994); Nollan v. Cal. Coastal Comm'n, 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987).
It is not disputed that a four-year statute of limitations applies to inverse condemnation claims. See § 95.11(3)(p), Fla. Stat.; Heckman v. City of Oakland Park, 644 So.2d 525 (Fla. 4th DCA 1994); Sarasota County v. Ex, 645 So.2d 7 (Fla. 2d DCA 1994); see also Suarez v. City of Tampa, 987 So.2d 681 (Fla. 2d DCA 2008); Szapor v. City of Cape Canaveral, 775 So.2d 1016 (Fla. 5th DCA 2001) (citing Sarasota Welfare Home, Inc. v. City of *114 Sarasota, 666 So.2d 171 (Fla. 2d DCA 1995)).
Although Heckman and Ex do not explicitly address whether the statute of limitations applies to a constitutionally void conveyance, nor do the other cases cited by the department, we deem them instructive. In Ex, 645 So.2d 7, the Second District reversed a finding of inverse condemnation based on an allegedly "involuntary" dedication of land which had occurred some eight years before the landowner filed the action.
In Heckman, 644 So.2d at 526, the plaintiffs sued the city in federal court for wrongful condemnation. The federal court dismissed the claims. Id. The plaintiffs then resurrected their claims in state court. Id. The city successfully argued that claims were now barred due to the applicable four-year statute of limitations. Id. The plaintiffs responded that the statute was tolled during the time they were pursuing the claims in federal court. The state trial court dismissed the suit, and this court also rejected the argument the statute of limitations was tolled and affirmed the dismissal. Id.
The church, however, maintains that the forced "exaction" in the 1992 plat was void from inception as an unconstitutional condition of plat approval because: (1) there was no "essential nexus" between the precondition to development approval and a legitimate state interest; and (2) there was no "rough proportionality" between the forced exaction and the projected impact of the proposed church/school development. As such, the church asserts that the forced exaction had no legal effect and conveyed nothing, and the passage of time could not "breathe life" into a plat dedication that was a nullity. The church also claims that if the statute of limitation applies, the time should not start running until the department commenced to use the parcel as part of a road widening in 2006.
The church filed affidavits in opposition to summary judgment from a certified land planner and from a state licensed engineer, opining that there was no "essential nexus" or "rough proportionality" to support the required dedication.
We conclude that the trial court correctly decided that the church's claim was time-barred. It is undisputed that the church never objected to the dedication or took any action to challenge it, despite the existence of administrative and judicial remedies. Instead, the church made the required dedication in 1992 and proceeded to develop its property. Now, fourteen years later, it asserts for the first time that the dedication was unconstitutional and seeks compensation.
Nollan, 483 U.S. at 837, 107 S.Ct. 3141, held that a permit condition which did not advance a legitimate state interest was a taking where there was no essential nexus between the condition and the state interest.
Later, in Dolan, the Supreme Court held that the burden rests with the government to justify the required dedication. The government must prove "(1) that an `essential nexus' exists between a legitimate state interest and the permit condition exacted by the government; and (2) that the degree of the exactions demanded by the government are `roughly proportional' to the projected impact of the proposed development." 512 U.S. at 386, 114 S.Ct. 2309.
The Court cited the doctrine of "unconstitutional conditions" as the basis for invalidating the exactions:
Under the well-settled doctrine of "unconstitutional conditions," the government may not require a person to give up a constitutional righthere the right *115 to receive just compensation when property is taken for a public usein exchange for a discretionary benefit conferred by the government where the benefit sought has little or no relationship to the property.
Id. at 385, 114 S.Ct. 2309.
The trial court did not, and we need not, reach the contention that there was no "essential nexus" or "rough proportionality" between the county's forced dedication of 7.5 acres pursuant to the county ordinance and the required dedication.
We note that in both Nollan and Dolan, the landowners, unlike the church, objected to the compelled dedication of their property and timely pursued available remedies to challenge the dedications.
We recognize that although the church "accepted the benefit of the development rights to which the ordinance condition attached, an acceptance of such benefits does not waive the right to contest invalid conditions of development." See Admiral Dev. Corp. v. City of Maitland, 267 So.2d 860, 862 (Fla. 4th DCA 1972). However, we also note that Florida courts have applied the exhaustion of remedies requirement to land use claims, where such would not be deemed "futile." See, e.g., City of Jacksonville Beach v. Prom, 656 So.2d 581, 582 (Fla. 1st DCA 1995).
We also recognize that in Sarasota County v. Taylor Woodrow Homes, Ltd., 652 So.2d 1247 (Fla. 2d DCA 1995), the court declined to apply a statute of limitations bar to a developer's claim that the parties' agreement was invalid when entered in 1974. There, the developer and the county had reached an agreement that authorized the re-zoning and development approval, conditioned on the developer building a private waste water treatment system and dedicating the system to the county. Nevertheless, the court was troubled by the owner's lengthy delay and stated:
We do not suggest that a developer waives these rights by agreeing to conditions, perhaps under protest, and then filing an action to determine the constitutionality of those conditions. We recognize Taylor Woodrow Homes' argument that it had no need to file suit unless and until the County formally requested the dedication. However, we are troubled by the concept that a developer can delay testing the conditions of its permit for a generation under these circumstances. We are concerned that Taylor Woodrow Homes may well have received benefits by not raising these issues in 1975 and that the citizens of Sarasota County may have acted to their detriment over the last twenty years in reliance upon the validity of this contract. If Taylor Woodrow Homes desired an individualized determination of rough proportionality concerning this dedication, the it may have had an obligation to request that determination many years ago.
Id. at 1251-52 (emphasis supplied; footnotes and internal citations omitted). The court's concern was manifested in its provision that, on remand, the county could raise the factual issues of waiver and estoppel in reply to the developer's constitutional challenges.
We deem Taylor Woodrow Homes distinguishable in that it dealt with an anticipated dedication, and at the time of the agreement, a publicly owned system was not available to the development.
It was also anticipated that Taylor Woodrow Homes could operate the system privately. In that case, the county resolution requiring the dedication did not occur for almost twenty years. To the extent Taylor Woodrow Homes is not distinguishable, we certify conflict with its recognition *116 that the developer's constitutional claims against the twenty-year-old agreement were not barred by the statute of limitations.
We also distinguish homestead cases such as Reed v. Fain, 145 So.2d 858 (Fla. 1962), Robbins v. Robbins, 360 So.2d 10 (Fla. 2d DCA 1978), and Gotshall v. Taylor, 196 So.2d 479 (Fla. 4th DCA 1967)[1], which hold that the statute of limitations is inapplicable to a constitutionally void homestead conveyance. In those cases, it was not the grantor challenging the validity of his own conveyance of real property, but innocent third parties possessing a vested interest in the properties.
We similarly distinguish Tampa-Hillsborough County Expressway Authority v. A.G.W.S. Corp., 640 So.2d 54, 57 (Fla. 1994), as it, too, does not address the applicability of the statute of limitations to a grantor's challenge to the validity of his own conveyance of real property. There, the supreme court held that the government action of filing a map of reservation describing a corridor of land to be used for future road widening or construction, was "simply invalid" and not a per se taking. Id. The court further held that a property owner could maintain an inverse condemnation action only if she could prove that the map of reservation effected a taking by causing substantial economic deprivation of her particular property. Id. at 58. The supreme court declared that an unconstitutional act is not always a per se taking that conveys title to the government, but that the act may be void. The court stated: "In situations where state action is declared an improper exercise of police power under due process, the regulation is simply declared unconstitutional. Therefore, a land use regulation can be held facially unconstitutional without a finding that there was an uncompensated taking." Id.
In the case at bar, we find that the conveyance was not void ab initio, as argued by the church, but merely voidable.
In rejecting the church's claim, we find persuasive analysis in Ockey v. Lehmer, 189 P.3d 51 (Utah 2008), which rejected a trust beneficiary's claim that the 1994 conveyance of the trust corpus to a developer was void ab initio, rather than merely voidable. Beginning with the presumption that contracts are voidable unless they clearly violate public policy, the Utah Supreme Court found that the trustees' conveyance of the trust corpus to the developer entity, even though they lacked authority because the trusts had terminated, was voidable rather than void ab initio, where the trustees' actions affected only the trust beneficiaries and did not harm the general public. The court explained:
In general, the difference between void and voidable contracts is whether they offend public policy. Contracts that offend an individual, such as those arising from fraud, misrepresentation, or mistake, are voidable. Only contracts that offend public policy or harm the public are void ab initio.
189 P.3d at 56-57 ("[C]oncluding that the 1994 conveyance was merely voidable because the trustee's actions were not contrary to public policy and did not injure anyone other than Ockey himself."); see also Black's Law Dictionary 1604 (8th ed. 2004) ("A contract is void ab initio if it *117 seriously offends law or public policy, in contrast to a contract that is merely voidable at the election of one party to the contract.").
Further finding that Ockey acquiesced in and ratified the 1994 conveyance, the court explained:
It is well established in our case law that an individual cannot go along with a contract for the purpose of enjoying benefits that "although not directly conferred by the contract, are nevertheless made possible as a result of the contract, only to later claim a right to rescind when he discovers the benefits ... will not be great enough to compensate him for the loss he will sustain by reason of the fraud." ... Ockey's entire argument regarding the illegality of the 1994 conveyance rests on the premises that when the trust terminated in 1986, ownership vested in him, rendering the latter conveyance void. But because the 1994 conveyance was merely voidable, it was capable of ratification by Ockey. Ockey ratified the conveyance by directing the trustees to convey his interest to IMHG in exchange for a partnership interest in IMHG and by accepting the benefits of his family's efforts to develop the ranch. For these reasons, we uphold the district court's determination that Ockey ratified the 1994 conveyance and affirm the court's summary dismissal of his quiet title and declaratory relief claims.
Id. at 59 (footnote and citations omitted).
Similarly, in the case at bar, we find that the 1990 plat dedication was not void ab initio, but merely voidable, where it affected only the church and did not harm the general public. We further find that the church ratified the conveyance by not objecting to it or taking any action to challenge it, notwithstanding the existence of administrative and judicial remedies. Furthermore, the church accepted the benefits of the dedication by proceeding to develop its property.
We conclude that where the rights of third parties, such as in homestead, are not affected, a stale claim is limited by the statute. Patently, there must be an outside limit on when a landowner can seek compensation for a taking where the owner does not pursue administrative or judicial remedies readily available at the time of approval and continues to accept the benefits of the development. See generally Nardone v. Reynolds, 333 So.2d 25, 36 (Fla.1976) (stating that it is "resolutely unfair" to require defendants to litigate stale claims brought by those who have slept on their rights).
As to all other arguments, we also find no error. Therefore, the judgment is affirmed.
GROSS, J. and ROSENBERG, ROBIN, Associate Judge, concur.
NOTES
[1] In Gotshall, 196 So.2d at 481, we held that, where the requirements of the constitution are not complied with in alienating homestead property, the attempt is "void ab initio, and subsequent events will not breathe life into it." This court observed that the statute of limitations would not subsequently validate an otherwise invalid conveyance, stating, "the statute of limitations is inapplicable to void deeds." Id.